Clarence **ALEXANDER**, Appellant,

v.

Vernon **HOUSEWRIGHT**, Director, Arkansas Department of Correction, Appellee.

No. 81–1495.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1981.

Decided Dec. 24, 1981.

Julius D. Kearney, argued, Pine Bluff, Ark., for appellant.

Steve Clark, Atty. Gen., Arnold M. Jochums, Asst. Atty. Gen., argued, Little Rock, Ark., for appellee.

Before GIBSON, Senior Circuit Judge, and BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Clarence Sidney Alexander appeals from the denial of his writ of habeas corpus by the United States District Court for the Eastern District of Arkansas.[1] Alexander contends that the state trial court denied him effective assistance of counsel by refusing to allow his trial counsel to withdraw because of a conflict of interest. He also argues that the district court's refusal to declare a mistrial or pick a new jury after the victim's mother made inflammatory remarks in the presence of potential jurors denied him a fair trial. Upon review of the record, we affirm.

I. *Background.*

On September 4, 1975, Terry Wyrick was shot twice during a robbery of the filling station where he worked. Police promptly arrested Alexander and William Lee Fowler. Both were charged with capital felony murder when Wyrick died seventeen days later. Fowler pleaded guilty to a lesser offense, murder in the first degree, and received a life sentence. Alexander pleaded not guilty, and was tried in a bifurcated proceeding. In the first phase of his trial, a jury found him guilty of the capital felony. In the second phase, the jury sentenced Alexander to life imprisonment without parole, the lowest penalty allowed under Arkansas law for capital murder. *See* Ark. Stat.Ann. § 41–1501 (1977).

After an unsuccessful appeal to the Arkansas Supreme Court, *see Alexander v. State*, 264 Ark. 11, 569 S.W.2d 106 (1978),[2] Alexander petitioned the District Court for the Eastern District of Arkansas for a writ of habeas corpus.[3] The district court referred the matter to Magistrate Henry L. Jones for a hearing. The magistrate submitted proposed findings of fact and recommended denial of Alexander's petition for a writ of habeas corpus. The district court adopted the magistrate's recommendations. Alexander now appeals from the denial of his writ of habeas corpus.

II. *Discussion.*

A. *Assistance of Counsel.*

In January 1976, the state court appointed William Palma Rainey to represent Alexander, and Kent Rubens to represent Fowler. Rubens discussed the case with his client Fowler a number of times and initiated plea negotiations with the prosecutor. Before trial, however, Rubens withdrew to attend a session of the Arkansas legislature, of which he was a member. Fowler obtained his own counsel and pleaded guilty, receiving a life sentence. Fowler agreed to testify for the State in its prosecution of Alexander.

In April 1976, after having withdrawn as counsel for Fowler, Rubens formed a law partnership with William Rainey. Because

1. Honorable Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

2. Justices Heckman and Howard dissented on the ground that the trial court erred in denying a mistrial because the victim's mother made prejudicial remarks to the jury.

3. Alexander alleged that his confinement was unconstitutional because (1) his trial counsel should have been allowed to withdraw because of a conflict of interest, (2) his conviction was based on illegally seized evidence, (3) he was denied effective assistance of counsel, and (4) he was denied a fair trial when the victim's mother made inflammatory remarks to a member of the jury before trial.

Rainey had little trial experience, he asked Rubens to help represent a client charged with capital felony murder and Rubens agreed. When Rainey realized that Rubens' former client Fowler was the codefendant of his client, Alexander, Rainey moved to withdraw as counsel for Alexander. The trial court denied his motion requesting withdrawal on April 23, 1976. The Arkansas Supreme Court dismissed an interlocutory appeal on December 20, 1976, because the trial court had not entered a final judgment. On the first day of trial, March 30, 1977, the court again denied Rainey's motion to withdraw.

Alexander argues that the court denied him his sixth amendment right to effective assistance of counsel because Rainey was not allowed to withdraw in spite of his conflict of interest. He contends that the conflict arose because Rubens, Rainey's law partner, was unable to cross-examine Fowler as fully as possible because Fowler was formerly Rubens' client. In addition, Alexander argues that, because of Rubens' past representation of Fowler, Rainey could not exploit Fowler's testimony fully in closing arguments.

■ This court recently stated that the sixth amendment right to counsel embodies " 'a correlative right to representation that is free from conflicts of interest.' " *Parker v. Parratt*, 662 F.2d 479, 483 (8th Cir. 1981) (quoting *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981)). To prevail on his sixth amendment claim, however, Alexander must show that his attorney actively represented conflicting interests. *See Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). The mere possibility of conflict does not suffice to show a sixth amendment violation. *Id.*

■ The record does not confirm Alexander's contention that Rainey actively represented conflicting interests. The Arkansas Supreme Court reviewed the record and found no indication that Rubens was hampered in cross-examining Fowler. *See Alexander v. State, supra,* 569 S.W.2d at 109. On habeas corpus review, this factual finding by the state court is presumed correct unless contradicted by convincing evidence. *See Sumner v. Mata,* 449 U.S. 539, 547, 550, 101 S.Ct. 764, 769, 771, 66 L.Ed.2d 722 (1981).

Alexander has failed to establish "*by convincing evidence* that the factual determination of the State court was erroneous." *Id.* at 550, 101 S.Ct. at 771 (citation omitted). Rubens testified at the federal habeas court's hearing after his former client Fowler explicitly waived his attorney-client privilege. Rubens was, therefore, free to specify any way that his past representation of Fowler created an actual conflict with his representation of Alexander. Although able to voice qualms about cross-examining Fowler, Rubens still was unable to articulate any way that his representation of Fowler specifically affected his cross-examination. Moreover, the record reveals that Rubens was not hampered on the cross-examination, during which he repeatedly highlighted Fowler's responsibility for the plan and emphasized that Fowler had struck the first, and perhaps fatal blow. Finally, although Rubens did not make the closing argument, the record demonstrates that his new partner, Rainey, made a vigorous argument highlighting Fowler's instigation of, and primary responsibility for the robbery and murder. Indeed, the forcefulness of Rainey's argument likely persuaded the jury to reject death as the penalty for the crime.[4]

### B. Inflammatory Remarks.

Alexander argues that the state trial court should have declared a mistrial after discovering that the victim's mother made inflammatory remarks to prospective members of the jury. According to the record, the conversation occurred in the hallway outside the courtroom at 9:30 a. m. Mrs. Flossie Wyrick stated in the presence of

---

4. We note that the evidence overwhelmingly established a capital murder, *i. e.*, a killing while engaged in the crime of robbery. *See* Ark.Stat.Ann. § 41–1501(1)(a) (1977).

three prospective jurors that her son was the victim of the robbery and murder, and that the defendant had shot him. She indicated two places in the face where her son had been shot, adding that it was cold-blooded murder. At the noon recess, after she had been picked for the jury, Mrs. Georgia Richardson informed the court of the incident. At a hearing in the judge's chambers, Mrs. Richardson stated that two other women had been present. Mrs. Wyrick, however, did not think that anybody else overheard the conversation. Neither woman could identify the others present nor say that they had actually been seated on the jury panel. Defense counsel declined the court's offer to have Mr. and Mrs. Wyrick stand before the group of prospective jurors during voir dire to determine if they had spoken with anybody about the case.

Alexander argues that he was denied a fair and impartial trial because these unidentified potential jurors were exposed to Mrs. Wyrick's inflammatory remarks and may have sat on the jury that convicted him.

In *Alexander v. State, supra,* the Arkansas Supreme Court fully discussed whether the contact between the victim's mother and prospective jurors sufficiently tainted the trial to require a mistrial. Noting that the trial judge excused Mrs. Richardson, who reported the conversation and who was the only identified person present when Mrs. Wyrick made her remarks, the court concluded that the circumstances did not warrant a mistrial. We agree with the federal magistrate that Alexander failed to prove that the trial court's denial of his motion violated his right to a fair trial. The court excused the tainted juror and allowed Alexander's counsel to ask the jurors about any conversations regarding the case heard outside the courtroom. We believe that both the state courts and the federal habeas court properly determined that Alexander was not entitled to relief on the basis of a mere allegation of prejudice

in the jury that convicted him. *See United States v. Minkin,* 504 F.2d 350, 355 (8th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975).

Accordingly, we affirm the district court's denial of the writ of habeas corpus.