Henry BROWN, Petitioner-Appellee,

v.

Louie L. WAINWRIGHT, Secretary, Department of Corrections, State of Florida, Respondent-Appellant.

No. 84–5726.

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1985.

---

Michael J. Neimand, Asst. Atty. Gen., Dept. of Legal Affairs, Miami, Fla., for respondent-appellant.

Karen Gottlieb, Asst. Public Defender, Miami, Fla., for petitioner-appellee.

Before FAY and JOHNSON, Circuit Judges, and HOFFMAN [*], District Judge.

WALTER E. HOFFMAN, District Judge:

On October 10, 1973, an indictment charged the petitioner, Henry Brown, with murder in the first degree. An initial trial ended in a mistrial when the jury was unable to reach a verdict. At the conclusion of a second trial, the jury returned a verdict of guilty to the charge of first degree murder and recommended a sentence of life imprisonment. The trial court imposed a sentence of death. The Supreme Court of Florida affirmed Brown's conviction but ordered the sentence reduced to life imprisonment with a minimum mandatory term of 25 years. On March 12, 1979, Brown was resentenced in accordance with the decision of the Florida Supreme Court.

Brown petitioned for a writ of habeas corpus in the federal court. The magistrate, to whom the matter was referred, recommended that the petition be denied, citing harmless error at the trial court level. On August 16, 1984, the district court denied Brown's petition for habeas corpus. In response to a motion for reconsideration, however, the district court granted the writ, finding that the petitioner's claims were of constitutional magnitude but not stating the reasons for this decision. The state appeals the order granting the writ of habeas corpus. We vacate the order and remand, holding that a federal court, in granting a writ of habeas corpus, must explain why the statutory presumption of correctness of state Supreme Court findings does not apply in the light of the factors listed in 28 U.S.C. § 2254(d).

## FACTS

The decision of the Supreme Court of Florida set forth the facts of the case:

On August 3, 1973, Abraham Goldstone drove to a shopping mall to cash a social security check. When he failed to return, his wife reported him missing. That evening a police officer saw five young men pushing a car later identified as belonging to Goldstone. All fled when the officer approached, but he caught up with two and they in some manner implicated Brown. The car was impounded, and an examination disclosed Goldstone's bankbook in the trunk, scuff marks on the interior of the trunk, bloodstains and bloodstained towels in the car, and at least one fingerprint later identified as Brown's. In the early morning hours of August 4, officers went to Brown's home, informed his father of their purpose, told Brown his rights, and questioned him. He admitted possession of the car and said he got it from Steve Benyard. Brown was then arrested for possession of a stolen car. After Brown was released, officers developed additional data linking Brown to Goldstone's disappearance and, after again informing Brown of his rights, they questioned him further. He amplified his earlier state-

[*] Honorable Walter E. Hoffman, U.S. District Judge for the Eastern District of Virginia, sitting by designation.

ment by revealing that he had come across Benyard and Mack Simmons with the car in a school parking lot and that Benyard had said he obtained it at the Sky Lake shopping mall in North Miami Beach.

In the due course of investigation officers discovered Goldstone's body at a small lake near the shopping mall. Goldstone had died from drowning, but his body showed that he also had been shot in the shoulder and hit about the head.

The state's chief witness, homicide Detective Dallas, testified at trial that he had arranged for a confrontation between Simmons and the petitioner. Dallas explained that both youths indicated that they understood their rights after admonition pursuant to *Miranda.* The detective further testified that when asked whether Henry Brown was involved in the death of Abraham Goldstone, Simmons answered in a single word, "Yes."[1] Regarding the events immediately following the accusation, Dallas specified that he had had Simmons removed from the room approximately two minutes after Simmons responded, and that Brown had uttered no words during this time.

The detective also testified as to an oral inculpatory statement which Brown made subsequent to the confrontation with Simmons. Prior to the admission of Brown's statement, defense counsel conducted a limited voir dire of Dallas regarding the voluntariness of the statement. At the conclusion of the voir dire, the statement was received into evidence over the objection of the defense counsel. A summary of the statement is included in the decision of the Supreme Court of Florida.

During the closing argument, the prosecutor summarized the confrontation for the jury. Defense counsel objected and moved for a mistrial. Defense counsel noted Simmons' absence, and the court responded that either side could have subpoenaed any witnesses that they wished. The defense objection to this comment was overruled, as was the repeated request for a mistrial.

In the memorandum in support of his petition for habeas corpus, petitioner asserts a violation of his constitutional rights. Brown argues that the introduction of inculpatory hearsay testimony at his state trial, as well as comments by the prosecutor and the trial court regarding this testimony, violated the confrontation clause of the Sixth Amendment, the self-incrimination clause of the Fifth Amendment, and the due process clause of the Fourteenth Amendment.

## DISCUSSION

In this habeas corpus proceeding, the district court originally denied petitioner's writ of habeas corpus but 12 days later entered an order granting the writ. The court found that petitioner's claims were of constitutional magnitude. The court also held that the respondent had failed to demonstrate beyond a reasonable doubt that such errors did not contribute to the jury's verdict. The court concluded that the errors were not harmless.

Significantly, the district court has not supplied reasons for its decision. In *Sumner v. Mata,* 449 U.S. 539, 551–52, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981), the Court stated, "[W]e now hold that a habeas court should include in its opinion granting the writ the reasoning which led it to conclude that any of the first seven factors were present, or the reasoning which led it to conclude that the state finding was 'not fairly supported by the record.' ... No court reviewing the grant of an application for habeas corpus should be left to guess as to the habeas court's reasons for granting relief notwithstanding the provisions of § 2254(d)."[2] The district court has not fol-

---

1. The trial court admitted Simmons' statement as an exception to the hearsay rule. The Florida Supreme Court held that the testimony was not hearsay, but an operational fact.

2. 28 U.S.C. § 2254(d) provides:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a

lowed this clear mandate. Brown assigned five specific errors in objecting to the magistrate's recommendation, but the court does not address these objections. We cannot determine how the district court arrived at its conclusion. Two especially critical omissions require attention. First, the district court should supply reasons supporting a determination of whether the prosecution's remarks in closing argument were invited by defense counsel's remarks. Second, the court should provide a rationale supporting its finding of no harmless error by the trial court. Finally, the court may wish to examine recent Supreme Court decisions for their potential applicability to the issues presented in this case.

For this reason, the judgment of the district court is VACATED and REMANDED for specific findings.

proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record;

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs number (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.