**[Cite as *State v. Fenderson*, 2024-Ohio-1176.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                       Court of Appeals No. E-23-041

    Appellee                                    Trial Court No. 2019 CR 0393

v.

Takye S. Fenderson                           **DECISION AND JUDGMENT**

    Appellant                                   Decided:  March 28, 2024

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Takye S. Fenderson, pro se.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} This matter is before the court on appeal of the Erie County Court of

Common Pleas denial of a petition for post-conviction relief.  Finding no error, we

affirm.

## II. Facts

{¶ 2} Appellant/petitioner, Takye Fenderson, was convicted after a jury trial of one count of possession of a fentanyl-related compound in violation of R.C. 2925.11(A) and (C)(11)(b), a felony of the fourth degree, one count of trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(1) and (C)(9)(c), a felony of the fourth degree, and one count of corrupting another with drugs in violation of R.C. 2925.02(A)(3) and (C)(1), a felony of the second degree.

{¶ 3} The facts, as established on direct appeal, linked Fenderson to J.M as the person who sold illicit drugs to J.M., an individual struggling with addiction and receiving treatment through rehab. *See State v. Fenderson,* 6th Dist. Erie No. E-21-018, 2022-Ohio-1973, ¶ 9-30. In the days preceding J.M.'s death from fentanyl toxicity, J.M.'s family members observed interactions between Fenderson and J.M., with J.M.'s cousin testifying that Fenderson sold drugs to J.M. and had told J.M. "to stop going through the middleman and just come to [Fenderson] directly." *Id.* at ¶ 11; 15-17.

{¶ 4} The night before J.M. was found dead from fentanyl toxicity, J.M. exchanged text messages and phone calls with Fenderson. *Id.* at ¶ 18. While the text messages did not explicitly reference drugs, police investigating the death recognized the text messages as indicative of drug dealing. *Id.* Police texted the number on J.M.'s phone and arranged another buy, "same as last," and Fenderson showed up to the prearranged meeting place with the phone in hand and the drugs in plain view in the car he drove. *Id.*

2.

at ¶ 19-20. Pills similar to the drugs in the car were later discovered in J.M.'s clothing, worn the night before he was found dead. *Id.* at ¶ 24.

{¶ 5} After deliberating, the jury found Fenderson guilty of all three counts, and the trial court imposed an aggregate prison sentence of nine-and-a-half years to 12 years.[1]

{¶ 6} On appeal, Fenderson challenged the sufficiency and weight of the evidence for each conviction; as to possession, specifically, he argued the car and its contents did not belong to him, suggesting he did not exercise dominion or control over the drugs. *Fenderson* at ¶ 75. In rejecting this argument, we noted:

> When looking at all of the attendant facts and circumstances, we find both that the evidence is sufficient to support the conviction, and that the conviction is not against the manifest weight of the evidence. Here, Rotuno engaged in a text message conversation with [J.M's] suspected drug dealer, and set up a potential drug transaction. Immediately after the suspected drug dealer messaged, "Here I come," [Fenderson] was observed leaving the Tims and driving to the Convenient Store where the transaction was to take place, with a phone in his hand. [Fenderson] was the only occupant of the vehicle. When [Fenderson] arrived at the store, he waited in his car for 20-30 seconds, and then went to the front door of the Convenient Store and

---

[1] The trial court did not merge the convictions for possession and trafficking but ordered the sentences to run concurrently; we found merger applied and reversed on appeal. *See State v. Fenderson,* 6th Dist. Erie No. E-21-018, 2022-Ohio-1973. Reversal had no effect on the aggregate prison term imposed.

3.

looked inside, as if he was looking for someone. As [Fenderson] walked back to his car, he noticed Rotuno. [Fenderson] then continued walking past the running car. When he was stopped, [Fenderson] lied, and denied that he was driving the car. Rotuno then called the phone number that he had texted to set up the drug transaction, and [Fenderson's] phone rang. Inside of the car, in plain view on the center console were pressed pills packaged for sale, which were virtually identical to the pills that were found in the pocket of the pants that [J.M.] was wearing on the night that he died.

*Fenderson* at ¶ 76.

{¶ 7} On September 2, 2022, Fenderson filed his petition seeking postconviction relief, pursuant to R.C. 2953.21 and 2953.23, arguing his trial counsel was deficient in failing to challenge the ownership of the pills confiscated from the vehicle. In support, Fenderson proffered the affidavit of the vehicle's titled owner, Angie Pina, who attested as follows:

I, Angie Pina, do herby swear that the ten M-30 pills, found in my car on august 22, 2019 by the Erie COUNTY Police Department were my pills. I did not come forward with this information previously because I did not know what happened to Takye Fenderson at court.

{¶ 8} Fenderson also proffered his own affidavit, claiming he was unable to speak with Angie Pina or "attempt to obtain her testimony regarding her vehicle" prior to trial. Fenderson also attested to obtaining discovery in his criminal case, "establishing Angie

Pina's arrest and conviction previous to this underlying matter, wherein she was found in possession of pills of the same like and kind (Marked "M 30" as well), within her vehicle in which notes that Defendant herein, Takye Fenderson (Myself), was not present during such arrest and search."

{¶ 9} The state of Ohio opposed the petition for postconviction relief and filed a motion for summary judgment. The state argued that Fenderson was attempting to relitigate his case, and based on the matters raised in his affidavits, Fenderson failed to present evidence demonstrating a cognizable claim that warranted a hearing. The state argued Fenderson's self-serving affidavit identified no basis for relief, and Pina's affidavit did not set forth sufficient operative facts to demonstrate substantive grounds for relief, considering Pina's friendship with Fenderson and the inconsistency between Pina's affidavit and her prior statements to police who investigated Fenderson's case. Furthermore, the state argued that because Fenderson's claims implicated trial strategy, the lack of an affidavit from counsel, addressing the failure to investigate Pina's possible role in the crime, required denial of the petition.

{¶ 10} On May 1, 2023, the trial court addressed Fenderson's petition on the record, permitting oral argument on the merits of the petition. The trial court considered Fenderson's argument that Pina's testimony, claiming ownership of the pills in the car Fenderson was driving to the arranged drug buy, created reasonable doubt. The trial court noted similar argument at trial, "that they were potentially the pills of the owner of the vehicle," and noted "ownership" of the pills was not clearly dispositive of the issues at

5.

trial, considering the totality of the evidence introduced to support the verdicts. The trial court addressed this argument, and made the following finding:

> There were other indications that he knew that there were drugs in the car. Among those other things being that the police were stationed at the convenient store.

> I think Brotherton may have been in an unmarked car. I don't have the transcript before me. But as I recall the testimony – is that correct? And that when the other marked vehicle pulled up, that Brotherton had been there before and saw the Defendant pull in and drive that car, get out, go into the store.

> When he came out, I believe this – and correct me if I'm wrong – that he – when he saw the police cruiser, he walked past the vehicle like it wasn't the car that he was driving. And when asked about whether he was driving that car, he said no. And they had clearly seen him pull up driving that car.

> And the whole thing about the text messages and the timing of all of that clearly support a conviction in this case. So therefore, the petition for post-conviction release is denied at this time.

The trial court followed up with a written entry, denying the petition for postconviction relief, and this appeal followed.

6.

### III. Assignment of Error

{¶ 11} Fenderson assigns the following as error in his appeal:

> The trial court abused its discretion and denied Fenderson's right's protected under the sixth and fourteenth amendment of the U.S. Constitution when finding at his PCR hearing his claim of ineffective assistance of trial counsel and the new evidence presented lacked the credibility [to] obtain relief.

### IV. Analysis

{¶ 12} In this case, the trial court denied the petition without an evidentiary hearing. We review the trial court's decision to deny the petition without hearing for an abuse of discretion. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. Furthermore, as part of our review, we give deference to the trial court's determination "regarding the sufficiency of the facts set forth by the petitioner and the credibility of the affidavits submitted." *Gondor* at ¶ 51, citing *State v. Calhoun,* 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus.

{¶ 13} Fenderson argues he is entitled to postconviction relief based on ineffective assistance of trial counsel. To merit relief based on ineffective assistance of counsel, Fenderson must demonstrate his counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Furthermore, the law governing

7.

postconviction relief required Fenderson to demonstrate such an infringement of his rights "as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." R.C. 2953.21(A)(1)(a)(i).

{¶ 14} Fenderson contends he presented evidence that demonstrated the ineffectiveness of his trial counsel, arguing his counsel's failure to investigate the case and procure Pina's testimony, as contained within her affidavit. Claims of ineffective assistance based on evidence never introduced at trial are addressed in postconviction proceedings, and not the direct appeal. *See State v. Bunch,* 171 Ohio St.3d 775, 2022-Ohio-4723, 220 N.E.3d 773, ¶ 35. In the "context of postconviction litigation, it is possible and appropriate to question whether a trial counsel's decisions were in fact deliberate and strategic and whether any strategic decisions were reasonable ones." *Bunch* at ¶ 36. To merit hearing, a petition "must be sufficient on its face to raise an issue whether [the petitioner] was deprived of the effective assistance of counsel" based on "factual allegations that cannot be determined by examining the record at trial." *Bunch* at ¶ 27. A petition for postconviction relief is limited to a collateral attack on the conviction as governed by statute, and is not another opportunity for appeal. *Calhoun* at 281.

{¶ 15} Fenderson's petition relies on Pina's affidavit testimony. Pursuant to the statute, the trial court considered the affidavit testimony, questioned the value of Pina's affidavit in light of the totality of the evidence admitted at trial, and denied the petition without any live testimony from Pina. In *State v. Calhoun,* the Ohio Supreme Court addressed the appropriate review of affidavit testimony in postconviction proceedings:

8.

Unlike the summary judgment procedure in civil cases, in postconviction relief proceedings, the trial court has presumably been presented with evidence sufficient to support the original entry of conviction, or with a recitation of facts attendant to an entry of a guilty or no-contest plea. The trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant. That conclusion is supported by common sense, the interests of eliminating delay and unnecessary expense, and furthering the expeditious administration of justice. *See* Civ.R. 1(B) and 1(C); [*State v.*] *Cole*, [2 Ohio St.3d 112, 114, 443 N.E.2d 169 (1982)] ("[T]he allegations outside the record upon which appellant relies appear so contrived, when measured against the overwhelming evidence in the record of trial counsel's competence, as to constitute no credible evidence"); *Sumner v. Mata*, [449 U.S. 539, 545–546, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)] (state appellate court factfinding based on a record review may be adequate to warrant a presumption of correctness in federal habeas corpus proceedings pursuant to former Section 2254[d], Title 28, U.S.Code).

An affidavit, being by definition a statement that the affiant has sworn to be truthful, and made under penalty of perjury, should not lightly be deemed false. However, not all affidavits accompanying a postconviction relief petition demonstrate entitlement to an evidentiary hearing, even assuming the truthfulness of their contents. Thus, where a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential. *See, generally, State v. Perry*, [10 Ohio St.2d 175, 226 N.E.2d 104 (1967)].

*State v. Calhoun,* 86 Ohio St.3d 279, 284, 714 N.E.2d 905 (1999).

{¶ 16} Here, Fenderson's argument of ineffective assistance is premised on Pina's claim of ownership of the drugs *as negating the evidence admitted at his trial*. However, Fenderson's new evidence merely provides additional support for his trial counsel's argument that the drugs belonged to the owner of the vehicle, with "ownership" not necessary to demonstrate possession or trafficking of drugs.

{¶ 17} The trial court addressed Pina's affidavit and found the ownership issue raised by Fenderson's trial counsel at trial and not a fact that, if established, would have

9.

affected the outcome of the trial. The trial court noted all the other evidence linking Fenderson to J.M.'s drug purchase, with evidence demonstrating Fenderson was the only driver of the vehicle from which the pills were seized at the scene of an arranged drug buy, with the drug buy arranged using Fenderson's contact information stored in J.M.'s phone, the night before his death. Moreover, Pina does not attest to being the individual who sold drugs to J.M., and while she claims to have come forward only after learning what happened in court, police took a statement from Pina during the investigation and Pina did not share that same information with police. Instead, Pina provided her affidavit after Fenderson's conviction, and as acknowledged by Fenderson in his own affidavit, Pina mailed the affidavit directly to Fenderson and not to the police or the prosecution.

{¶ 18} Finally, Fenderson argues the trial court erred in not crediting Pina's sworn statement, and denying his petition without live testimony from Pina in order to determine whether trial counsel was constitutionally ineffective. The trial court, in its gatekeeping role, determined no hearing was necessary after reviewing the petition, supporting affidavits, evidence, files and the record of the case. *See Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 51, quoting *Calhoun,* 86 Ohio St.3d 279, 714 N.E.2d 905. The trial court, as the same court that presided over Fenderson's trial, found Pina's affidavit did not demonstrate substantive grounds for relief, citing the overwhelming evidence presented at trial. The trial court acted within its sound discretion in weighing the credibility of the affidavit, and the record otherwise supports the trial court's decision.

10.

**{¶ 19}** Based on the foregoing, we find the trial court did not abuse its discretion in denying the petition for postconviction relief without evidentiary hearing. Fenderson's sole assignment of error, therefore, is not well-taken.

### V. Conclusion

**{¶ 20}** We affirm the judgment of the Erie County Court of Common Pleas. Appellant, Takye Fenderson, is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.   _____
           JUDGE
Gene A. Zmuda, J.

          _____
Myron C. Duhart, J.      JUDGE
CONCUR.

          _____
           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.