**Joe T. ARNOLD, Petitioner,**

v.

**Michael DUTTON, etc., et al., Respondents.**

**Civ. A. No. 3:84–0203.**

United States District Court,
M.D. Tennessee,
Nashville Division.

April 3, 1984.

On Appointment of Council
April 13, 1984.

On the Merits Aug. 13, 1984.

Larry D. Woods, Nashville, Tenn., for petitioner.

Wayne Uhl, Asst. Atty. Gen., Nashville, Tenn., for respondents.

## MEMORANDUM AND ORDER

NEESE, Senior District Judge, Sitting by Designation.

The petitioner Mr. Joe T. Arnold applied *pro se* for the federal writ of habeas cor-

pus, claiming *inter alia* that he is in the custody of the respondent-warden pursuant to the judgment of November 12, 1981 of the Criminal Court of Davidson County, Tennessee, in violation of the Constitution, Fourth, Fifth and Sixth Amendments. 28 U.S.C. § 2254(a). It is unclear from such application whether the applicant claims his exhaustion of remedies available to him in the appellate courts of Tennessee. 28 U.S.C. § 2254(b).

The applicant alleged that he took an appeal from his aforementioned judgment of conviction to the Court of Criminal Appeals of Tennessee, which affirmed that judgment on June 2, 1983 in *State of Tennessee*, appellee, v. *Joe T. Arnold*, appellant, no. 81–313–III in said Court. He exhibited also his application of July 5, 1983 to the Supreme Court of Tennessee for permission to appeal therein; however, he makes no allegation concerning any action thereon.

■ Ordinarily, a habeas corpus application by one detained under the judgment of a court of a state will be entertained only after all state-remedies available, including all appellate remedies in the state-courts, have been exhausted. *Ex parte Hawk*, 321 U.S. 114, 116–117, 64 S.Ct. 448, 450[5], 88 L.Ed. 572 (1944). This Court will withhold further examination of the petitioner's application on preliminary consideration of his federal claims for 10 days, Rule 4, 28 U.S.C. fol. § 2254, to accord him an opportunity to amend his application so as to demonstrate whether his state-remedies have indeed been exhausted.

All other matters hereby are RESERVED.

### On Appointment of Counsel

### ORDER

■ It appearing on additional preliminary consideration thereof, Rule 4, 28 U.S.C. fol. § 2254, from an amendment of the application herein that permission for the petitioner to appeal the judgment of affirmance of June 2, 1983 in *State of Tennessee*, appellee, v. *Joe T. Arnold*, ap-

pellant, no. 81–313–III in the Court of Criminal Appeals of Tennessee, was denied September 6, 1983 by the Supreme Court of Tennessee, establishing a *prima facie* case of the petitioner's exhaustion of his available state remedies, 28 U.S.C. §§ 2254(b), (c); and, it appearing furthermore that the applicant herein has stated a substantial claim, that he was deprived in his prosecution by the State of Tennessee of his federally-guaranteed right to a speedy trial, Constitution, Sixth Amendment, Speedy Trial Clause; *see Klopfer v. North Carolina,* 386 U.S. 213, 226, 87 S.Ct. 988, 995, 18 L.Ed.2d 1 (1967):

It hereby is

DETERMINED that the interests of justice require that the applicant be furnished representation pursuant to the pertinent Plan of this Court, he having been determined on February 3, 1984 unable financially to obtain representation, and Larry D. Woods, Esq., 121 17th Avenue, South, Nashville, Tennessee 37203 (telephone no.: (615)/259–4366), hereby is appointed to furnish such representation. 18 U.S.C. § 3006A(g).

### On The Merits

### MEMORANDUM OPINION, FINDINGS AND CONCLUSIONS

The petitioner Mr. Joe T. Arnold applied *pro se* for the federal writ of habeas corpus as a person in the custody of the respondent-warden pursuant to the judgment of November 12, 1981 of the Criminal Court of Davidson County, Tennessee in *State of Tennessee v. Joe T. Arnold, et al.,* no. C–8289. He was furnished counsel herein and, in his amended application, claims he is in such custody in violation of his federal-constitutional rights to a speedy trial, against compulsory self-incrimination, and to due process of law, Constitution, Sixth Amendment, Speedy Trial Clause; Fifth Amendment, Compelled Self-Incrimination and Due Process Clauses; and Fourteenth Amendment, Due Process Clause. 28 U.S.C. § 2254(a). It is conceded by the respondent-warden that the applicant exhausted his state-remedies as to the ques-

tions presented to this Court herein. 28 U.S.C. § 2254(b).

The applicant was arrested in Shelby County, Tennessee on the afternoon of October 30, 1980. He was interrogated early that evening by a police-sergeant of Memphis, Tennessee after having been given the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and answered questions put to him by such interrogator.

In that interrogation, the applicant related *inter alia* what he claims to have been told by Mr. Robert Edward Hunt concerning the latter's stealing of guns from a store. When asked the location of that store, the applicant stated either: (a) "No, I ain't answering no more questions," or (b) "No, I ain't asked no more questions," or (c) " * * * never expressed any desire or intention to exercise any of his constitutional rights or to decline to answer any more questions of him. * * * " The interrogation continued thereafter unabated.

The applicant was interrogated again in Memphis the following day, this time by detectives of Nashville, Tennessee. He was reminded of his rights under *Miranda, supra,* at the outset of the interview.

The applicant and Mr. Hunt were under investigation by the Nashville Police at that time for the crimes on conviction of which he is now in custody, *i.e.,* the armed robbery and aggravated kidnapping of (as well as the assault with intent to commit murder on) Mr. William Corbitt; the murder of Mr. James Chapman; and the armed robbery and kidnapping of Ms. Mary Forsythe. Detective Jerry Moore promised the applicant that any statement he made to the interrogators would not be used against him in court, stating *inter alia:*

Joe, I'd like to ask you again; you've already talked to these [Memphis] officers here about the old [deceased] man out on the river bank behind Metro Center [in Nashville]. Would you mind telling me a little more about that?

Joe, I will advise you again: if you are going to cooperate with me, I need complete cooperation. You know as well as I

know that, if you lie to me, all it's going to do is mess-you-up later.

All right, Joe, the old man down on the river-bank—I want you to listen to me: we know quite a bit about what happened down there; we know quite a bit about what happened later to the old man's car; we know where that car was—somebody was seen driving that car.

Now, Joe, I want you to think very carefully about what you say and how much you know about this, 'cause, if you are involved, we want the truth from you now. If you're willing to speak about it, we're willing to listen.

*This* tape—this *interview—is confidential,* in the sense that if it's used by the prosecutors, all of the *officers and the district attorney's office* [sic] *[are] the only* people [sic: *persons* ] that [sic: *who]* listen to this tape. It can, it may not be—*it may not have to be introduced into court.* Do you understand that?

So, *if you* wish to *cooperate with us, your attorney might request* that this tape not be—*that other people* [sic] might *not* learn or *know about what you have spoken,* that you have told us. Do you understand? * * * [Emphases added here] [1]

The applicant told the interrogator that he was saying his life was in danger because of what he was saying, to which the interrogator responded *inter alia:* "I can't promise you * * * but *I have taken many a statement* and it [sic] was *never introduced in* that *court* room—never nothing said; *what the man said [was] never read-out in Court* * * *. Do you follow me? * * *" (Emphases added here).

Thereafter, the applicant made statements to his interrogator which were inculpatory of himself as to the crime against Mr. Corbitt, and these statements were

used in Court against the applicant, contrary to the foregoing promise.

The applicant remains now in the continuous custody of the state of Tennessee into which he was taken on October 30, 1980, *supra.* He was held to the action of the grand jury on "the Corbitt charges" November 25, 1980 and on a separate murder charge on December 12, 1980. The aforenamed Mr. Hunt was arrested on December 29, 1980 and held on January 8, 1981 to the action of the grand jury.

The applicant undertook to demand through his attorney a speedy trial and a dismissal of "the Corbitt charges" against him sometime in January, 1981, but his attorney filed a motion for such relief only on June 10, 1981. The applicant and Mr. Hunt were indicted on June 26, 1981 on the charges for which they had been under investigation.

Trial of the applicant and Mr. Hunt were assigned on August 6, 1981 for November 9, 1981. The applicant filed a motion on September 16, 1981 for a severance of defendants, a separate trial of the offenses, and for a dismissal of the indictment because of his having been denied a speedy trial.

The "Corbitt charges" were severed from the other charges in the indictment by agreement on November 4, 1981. The trials of the applicant and Mr. Hunt thereon were separated, and the applicant's aforementioned motion for a dismissal was overruled, on November 9, 1981. The applicant was tried on November 10, 12, 1981.

I

The merits of the factual issue, whether inculpatory statements made by the applicant after he had decided to remain silent were admitted in evidence against him on his trial, were determined on June 2, 1983 after a hearing in *State of Tennessee,* appellee, v. *Joe T. Arnold,* appellant, no. 81–313–III in the Court of Criminal Appeals of

---

**1.** The assistant attorney-general of Tennessee is commended for bringing to attention the fact that the previously-considered promises omitted much of the foregoing and commends him and

adverse counsel for providing a more comprehensive transcript of the interview than was provided the courts of Tennessee.

Tennessee, *permis.app.den.* September 6, 1983 by the S.Ct. of Tennessee. It was found therein that the applicant " * * * never expressed any desire or intention to exercise any of his constitutional rights or [to] decline to answer any questions asked of him. * * * "

■ That finding must be accorded a presumption of its correctness by this Court. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769[5], 66 L.Ed.2d 722 (1981). As to that claim, therefore, law and justice require that the applicant Mr. Arnold be denied all relief. 28 U.S.C. § 2243.

## II

The respondent-warden contends that this Court must accord the same presumption of correctness to such Court's additional finding, that the applicant's inculpatory statements given to the detectives of the Nashville Police were " * * * not coercive in nature, nor was the defendant's [applicant's] will overborne at the time the statement[s] w[ere] made. * * * " *State of Tennessee,* appellee, v. *Joe T. Arnold,* appellant, *supra.* That contention does not comport with federal-constitutional law:

As to the ultimate issue-of-fact, a federal district judge " * * * may not defer to [a] state court's finding of law. It is the district judge's duty to apply the applicable federal court findings independently. The state conclusion of law may not be given binding weight on [federal] habeas [corpus]. * * * " *Townsend v. Sain,* 372 U.S. 293, 318, 83 S.Ct. 745, 760 [32], 9 L.Ed.2d 770 (1962).

■ This Court hereby FINDS and CONCLUDES from the historical facts herein, as found by the courts of Tennessee, that the incriminating statements made to the Nashville policemen by the applicant on October 31, 1980, *supra,* were obtained by direct promises of the interrogators that such statements would not be used against the applicant on his trial; " * * * the test of voluntariness * * * is whether the confession was ' "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, [or] by the exertion of any improper influences." ' *Bram v. United States,* 168 U.S. 532, 542–543, 18 S.Ct. 183, 187, 43 L.Ed. 568 (1897) * * *." *Hutto v. Ross,* 429 U.S. 28, 30, 97 S.Ct. 202, 203[1], 50 L.Ed.2d 194 (*per curiam,* 1976); *accord: Malloy v. Hogan,* 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964) ("We have held inadmissible even a confession secured by so mild a whip as the refusal, under certain circumstances, to allow a suspect to call his wife until he confessed.")

"*Bram* dealt with a confession given by a defendant in custody, alone and unrepresented by counsel. In such circumstances, even a mild promise of leniency was deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess. * * * " *Brady v. United States,* 397 U.S. 742, 754, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). The respondent-warden concedes that the applicant was a "drifter" who lived with other homosexuals and does not contest the applicant's claim that he attended school for only five years and reads and writes "slow".

The question for this Court here is, did the conduct of the Nashville policemen " * * * 'bring about' a confession 'not freely self determined'? * * * " *Shotwell Manufacturing Co. v. United States,* 371 U.S. 341, 347–348, 83 S.Ct. 448, 453[5], [6], 9 L.Ed.2d 357 (1963). This Court is convinced and hereby FINDS that the incrimination of himself by the applicant was "not freely self-determined" but was "brought-about" by the promises of his interrogators.

" * * * Governments, state and federal, are compelled to establish guilt by evidence independently and freely secured * * *," *Malloy v. Hogan, supra,* 378 U.S. at 7, 84 S.Ct. at 1493[5], and the prime purpose of such rulings " * * * is to guarantee full effectuation of the privilege against self-in-

crimination, the mainstay of criminal justice. * * * [T]he rulings secure scrupulous observance of the traditional principle, often quoted but rarely heeded to the full degree, that 'the law will not suffer a prisoner to be made the deluded instrument of his own conviction.' [Footnote reference omitted.] * * *" *Johnson v. State of New Jersey*, 384 U.S. 719, 729–730, 86 S.Ct. 1772, 1779, 16 L.Ed.2d 882 (1966), *reh. den.*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Law and justice require that the applicant have relief on this ground. 28 U.S.C. § 2243, *supra.*

### III

That "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy trial * * *," Constitution, Sixth Amendment, *supra,* is a substantial right we all have, " * * * one of the most basic rights preserved by our Constitution * * *," *Smith v. Hooey*, 393 U.S. 374, 378, 89 S.Ct. 575, 577[2], 21 L.Ed.2d 609 (1969). Included among the purposes of that right is " * * * '[1] to prevent undue and oppressive incarceration prior to trial, [and] [2] to minimize anxiety and concern accompanying public accusation' * * *." *Klopfer v. North Carolina*, 386 U.S. 213, 226, 87 S.Ct. 988, 995, 18 L.Ed.2d 1 (1967).

As stated (and now computed), Mr. Arnold was incarcerated for 214 days after his arrest and prior to his indictment. His anxiety and concern which accompanied his public accusation extended for an aggregate of 370 days after his arrest and prior to commencement of his trial.

A panel of the Court of Criminal Appeals of Tennessee examined each of the four factors delineated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in making its determination of whether the applicant's right to a speedy trial had been violated in this instance. It did " * * * not find any circumstances which warrant dismissal of the prosecution * * *" against him for such reason. *See State of Tennessee,* appellee, v. *Joe T. Arnold,* appellant, *supra.*

It found that " * * * [a]pproximately eight months elapsed between defendant's [applicant's] arrest and indictment, and a bit more than twelve months between his arrest and trial. * * *" *Ibid.* It found " * * * no evidence of any deliberate attempt to delay trial * * *" but that the " * * * only reason appearing for the lapse of time between defendant's [applicant's] arrest, referral to the grand jury, and his indictment, was the [prosecuting-attorney for the] State's misinterpretation of our Rules of Criminal Procedure.

"The Assistant District Attorney General representing the State at the hearing on the [applicant's] motion to dismiss [the indictment against him] insisted it was incumbent on the State to join the defendants in the same indictment under the facts of this case. Rule 8 of the Rules of Criminal Procedure [of Tennessee] does require mandatory joinder of offenses * * *. Where such joinder of offenses might give rise to an injustice, Criminal Procedure Rule 14 makes provisions for relaxation of the rules.

"Defendant [applicant] * * * could have been indicted at the January [,1981] term of court except for the coincidence that his co-defendant, Hunt, was not arrested until the end of December, and was bound over to the grand jury in January. As a practical matter he was not indicted until the May term, beginning on the second Tuesday of that month. Because of the misconception of the rules [by the attorney for the state of Tennessee] defendant's [applicant's] indictment was also held over. * * *" *Ibid.*

It found that the applicant " * * * did assert his right to have the proceedings expedited * * * and [there was] absolutely no evidence of either actual or presumptive prejudice to the defendant [applicant] in the *short* [emphasis added by this writer] delay which was incurred * * *." As the respondent-warden also argues by brief, the panel stated that " * * * the societal disadvantages of lengthy pre-trial incarceration may be presumed * * *," citing *Barker v. Win-*

*go;* " * * * however, * * * prejudice is only one of the factors to be considered together with such other circumstances as may be relevant. Any prejudice to the defendant [applicant] in this case was minimal. * * * " *Ibid.*

The finding of the intermediate criminal-appellate Court of Tennessee, that there were no circumstances factually relating to the trial of the applicant which deprived him of a speedy trial, must also be accorded a presumption of correctness by this Court. 28 U.S.C. § 2254(d), *supra; Sumner v. Mata, supra.* As to that claim, accordingly, law and justice require that the applicant Mr. Arnold be denied all relief. 28 U.S.C. § 2243, *supra.*

### IV

Because the applicant was deprived of his right under the federal Constitution against self-incrimination, *supra,* the detention of the petitioner Mr. Joe L. Arnold pursuant to the judgment of November 12, 1981 of the Criminal Court of Davidson County, Tennessee in *State of Tennessee v. Joe T. Arnold, et al.,* no. C–8289, is void. Therefore, he is entitled to his release from the custody of the respondent-warden unless he is retried within a reasonable time on the indictment therein free of such constitutional violation.