**Curtis Melton SANDERSON, Petitioner,**

v.

**Manfred MAASS, Superintendent, Oregon State Penitentiary, Respondent.**

**Civ. No. 86–6589–E.**

United States District Court, D. Oregon.

June 9, 1988.

Paul S. Petterson, Asst. Federal Public Defender, Portland, Or., for petitioner.

Dave Frohnmayer, Atty. Gen., Scott McAlister, Asst. Atty. Gen., Salem, Or., for respondent.

## AMENDED OPINION

PANNER, Chief Judge.

█ Curtis Melton Sanderson, an Oregon inmate, brings this habeas petition under 28 U.S.C. § 2254. He alleges that he did not voluntarily plead guilty and that the state trial court improperly failed to appoint him counsel. The parties cross-move for summary judgment. Magistrate Michael R. Hogan filed his Findings and Recommendation on January 14, 1988. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When either party objects to any portion of the Magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report. 28 U.S.C. § 636(b)(1)(C); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Sanderson has filed timely objections. I have therefore given the file of this case *de novo* review. I agree with Magistrate Hogan's findings. I decline to adopt the recommendation.

## BACKGROUND

Sanderson has an eighth-grade education and a history of schizophrenia. On September 7, 1982, he was arrested and charged with two counts of first degree rape of his twelve and thirteen year old daughters.

While in jail, he provided financial information to a custody referee, who was in charge of pretrial releases and recommendations for court appointments. Based on the information, the custody referee filled out a Security Release Questionnaire/Financial Statement, which Sanderson signed. It described Sanderson as a self-employed auto glass worker who earned $4,000 in the previous year. It listed the following assets with no balance due: (1) a

1965 Pontiac LeMans worth $1,500; (2) a 1964 Chevrolet pickup worth $750; (3) tools worth $250; (4) a stereo and television worth $250; and (5) a travel trailer worth $1,400. Petitioner's Brief in support of summary judgment (PB), Exh. B–3 at 31–32.

Bail was set at $15,000 on each count. Unable to meet bail, Sanderson remained in jail. A public defender apparently represented him at his first appearance in early September 1982. *See*, PB, Exh. B–4 at 34. At the request of Mr. McCoy, a custody referee, the court held a hearing on September 20, 1982 to review Sanderson's financial status. Mr. McCoy recited the above assets and stated that if the information was true, Sanderson did not qualify for appointed counsel. The court asked Sanderson, "Do you want to be heard on that matter?" Sanderson replied:

Well, yes and no. It's true. I have only one thing in my name and that's the pickup. The trailer is not in my name or in my wife's name either.

Mr. McCoy stated that the court could consider both Sanderson's and his wife's assets to determine eligibility. The court then declined to appoint counsel. Nonetheless, the public defender assisted Sanderson in entering his plea of not guilty. PB, Exh. B–4 at 33–35.

In late September, a deputy district attorney visited Sanderson in jail to determine if he would proceed to trial. Sanderson told him, "since I had no attorney, no, I was not going to trial." PB, Exh. C at 355. The deputy district attorney scheduled the case for a change of plea hearing.

On October 1, 1982, Sanderson appeared without an attorney. The following occurred:

THE COURT: State of Oregon versus Curtis Melton Sanderson.

Mr. Sanderson, the district attorney's office came back through Mr. Gorham yesterday and indicated to me that they wanted this set on the docket because they thought you wanted to enter a plea of guilty to a couple of charges. Is that true?

THE DEFENDANT: Yes, sir.

THE COURT: Now, you are not represented by an attorney; and, in fact, a decision had been made that you needed to sell some personal property to finance your own attorney either partially or in full. And, as I understand it, you have declined to do that.

THE DEFENDANT: Yes.

THE COURT: Do you realize that if you proceed now without an attorney, that is up to you and that's your choice?

THE DEFENDANT: Yes, sir.

THE COURT: Do you feel any dilemma in proceeding without an attorney?

THE DEFENDANT: No.

PB, Exh. B–5 at 38. The court then explained the possible fines and prison terms, which Sanderson said he understood. The court continued:

THE COURT: Do you think you have enough experience in order to make the choice of proceeding with a lawyer or without one?

THE DEFENDANT: Not really, no. But might I say that if I sell this personal property, that would leave my wife and my children homeless. And I feel that they should have a place to live and some way of getting around.

THE COURT: Do you think it's the right thing to do to plead guilty?

THE DEFENDANT: Right at this time, yes.

THE COURT: Are you guilty?

THE DEFENDANT: Yes, I am.

THE COURT: Any doubt about it?

THE DEFENDANT: No.

*Id.* at 39–40.

The court asked Sanderson if he had a defense to the charges. He stated that he was an alcoholic and that would be his defense. However, he stated that he did not want to raise that defense at trial because he did not wish to embarrass his children and his family any further. *Id.* at 41. The court advised Sanderson of his rights, and he waived them. Sanderson plead guilty to both counts.

In September, juvenile proceedings were instituted. On November 23, 1982, the juvenile court appointed Shelly Smith as

Sanderson's counsel for the juvenile proceedings. She helped him prepare an affidavit and motion for the appointment of counsel in his criminal proceedings. The affidavit explained that the travel trailer served as his home, the pickup was outfitted for his business, and that the tools were also for his business. He stated that he had asked Smith to represent him and she would charge $5,000 to do so. PB, Exh. B–10 at 76–78. Based on the affidavit, the court appointed Lauren Holland to represent Sanderson at his sentencing.

Holland moved for an "examination to determine sexually dangerous person's status." PB, Exh. B–11 at 79–81. The court granted that motion and sent Sanderson to the state mental hospital for examination. The record does not indicate the results of that examination. On February 4, 1983, Sanderson appeared with Holland for sentencing. The court imposed a twenty year sentence on both counts, with mandatory ten year minimums to be served consecutively.

Sanderson sought state post-conviction relief on the grounds that his plea was not voluntary and that the court erred in failing to appoint counsel. At the hearing, Sanderson, Mr. McCoy, the custody referee, and the records clerk for Oregon Department of Motor Vehicles (DMV) testified. Sanderson testified, and the DMV records confirmed, that Ralph Scott owned the travel trailer until October 10, 1982, at which time title transferred to Sanderson's wife. All the other vehicles, with the exception of the pickup outfitted for Sanderson's business, were in his wife's name. According to Sanderson's affidavit, his wife refused to sell any of the vehicles to raise money for an attorney, including the pickup in his name. The travel trailer served as their home.

On September 8, 1985, Judge Brown denied Sanderson's post-conviction petition by letter without explanation. PB, Exh. A at 30. The state submitted findings of fact and conclusions of law which Judge Brown adopted over Sanderson's objections. PB, Exh. C at 361–63. They provided:

## FINDINGS OF FACT

1. The trial court was advised by a financial statement filed by petitioner that he had $2,250 worth of automobiles with no balance due, a travel trailer worth $1,400, a stereo worth $250, and tools worth $250.

2. Petitioner never asked the court again for a court-appointed attorney.

3. Petitioner never advised the trial court that his family was living in the travel trailer, or that selling any of those assets would cause undue hardship to his family.

4. Petitioner was represented by counsel at sentencing, and no motion to withdraw the guilty plea was entered.

5. Petitioner presented no proof that he had attempted to obtain legal counsel to represent him in this matter.

## CONCLUSIONS OF LAW

1. Petitioner was properly denied court-appointed counsel based on the financial report he submitted to the court.

2. Petitioner is not entitled to post-conviction relief.

Based on the foregoing Findings of Fact and Conclusions of Law, the court makes the following.

## JUDGMENT

NOW, THEREFORE, IT IS ORDERED that petitioner's petition for Post–Conviction Relief is denied and dismissed with petitioner obtaining no relief thereunder.

Sanderson appealed. The Oregon Court of Appeals affirmed without opinion. *Sanderson v. Cupp,* 80 Or.App. 152, 720 P.2d 415 (1986). The Oregon Supreme Court denied review. *Sanderson v. Cupp,* 301 Or. 765, 726 P.2d 377 (1986).

## STANDARD

■ State factual findings are presumed to be correct under 28 U.S.C. § 2254(d). *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). However, the presumption will not apply where the factual findings are not "fairly supported by the

record." 28 U.S.C. § 2254(d)(8). The presumption does not apply to questions of law or mixed questions of law and fact. *Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980).

## DISCUSSION

■ In *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court held that the sixth amendment right to counsel applies to the states through the fourteenth amendment. The Court stated:

> [I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him.... The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours.

*Id.* at 344, 83 S.Ct. at 796. The appointment of counsel for an indigent defendant is required at every stage of a criminal proceeding where substantial rights may be affected. *Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967). Although a defendant has a constitutional right to self-representation, "he should be aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)).

■ Magistrate Hogan correctly found that many of the state court findings were not fairly supported by the record. Sanderson has established that at his change of plea hearing he advised the court that he could not afford to retain counsel and that selling his assets would leave his family homeless and cause undue hardship. It is clear that his financial status did not change from the time of denial of counsel to appointment of counsel. The only change was in his ability to articulate his financial status to the court which resulted from the help of his juvenile court-appointed attorney.

Sanderson also established that he advised the court that he did not have enough experience to proceed without an attorney. The record does not establish that he waived his right to counsel "with eyes open." *See Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. Rather, he stated to the court that he did not wish to proceed without an attorney. The court inquired, "Do you think it's the right thing to do to plead guilty?" Sanderson replied, "Right at this time." Sanderson did not choose to proceed without an attorney. He was not given the choice.

Sanderson also established that he attempted to obtain counsel on his own. In his affidavit, which was uncontroverted, he states that he requested Smith to represent him, but she would charge $5,000.

■ Magistrate Hogan suggests that the issue of Sanderson's indigency was rendered moot by the later appointment of counsel for sentencing and his failure to withdraw his plea prior to sentencing. This is not sufficient to overcome the violation of his right to counsel at his change of plea hearing. Appointment of counsel for an indigent defendant is required at every stage of a criminal proceeding where substantial rights may be affected. *Mempa v. Rhay,* 389 U.S. at 134, 88 S.Ct. at 256; *accord Jackson v. James,* 839 F.2d 1513 (11th Cir.1988) (sixth amendment violated where defendant did not clearly waive right to counsel and proceeded to trial, even though stand-by counsel appointed and counsel reappointed during trial for completion of proceedings).

The harmless error doctrine is also inappropriate. In *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the Supreme Court noted that some constitutional errors, such as the violation of right to counsel, require reversal regardless of the evidence in the particular case. *Id.* 106 S.Ct. at 3106; *accord United States v. Balough,* 820 F.2d 1485, 1490 (9th Cir.1987) (harmless error doctrine presupposes the assistance of counsel and therefore cannot apply to analysis of right to counsel).

Sanderson testified at his state habeas hearing that he had asked the attorney appointed for sentencing to withdraw his plea. She did not. Magistrate Hogan suggested that this would be a claim of ineffective assistance of counsel, which has not been exhausted. Although Sanderson may have such a claim, this issue was not previously raised nor did the state urge that such a claim was not exhausted. In *Granberry v. Greer,* — U.S. —, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), the Supreme Court stated that where the state fails to raise the issue of exhaustion and the case presents neither an issue of fact nor of unresolved state law, then it may be necessary to hold that nonexhaustion has been waived in order to avoid unnecessary delay in granting the relief that is plainly warranted. *Id.* 107 S.Ct. at 1675.

Here, the record clearly shows that Sanderson was indigent from the time of his arrest through sentencing. He advised the court that selling his assets would cause his family undue hardship. The court's failure to appoint counsel for his change of plea hearing violated his sixth amendment right. The record fails to indicate a knowing and intelligent waiver of the right to counsel at that hearing. The sixth amendment violation is not overcome by the later appointment of counsel for the sentencing hearing.

## CONCLUSION

The State's motion for summary judgment is denied. Sanderson's motion for summary judgment is granted. The State shall grant Sanderson a new trial within 90 days or if the State fails to do so, Sanderson shall be released.