849 F.2d 607
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Isaac WELCH, Jr., Plaintiff-Appellee,
v.
W.H. CALDWELL, Superintendent; Attorney General of North
Carolina, Defendants- Appellants.
 No. 87-6100.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 11, 1988.
Decided: June 13, 1988.
 
 Richard N. League, Special Deputy Attorney General (Lacy H. Thornburg, Attorney General, on brief), for appellants.
 Thomas Karlton Knight (Snyder, Leonard, Biggers & Dodd, P.A., on brief), for appellee.
 Before K.K. HALL and WILKINS, Circuit Judges, and W. EARL BRITT, Chief United States District Judge for the Eastern District of North Carolina, sitting by designation.
 WILKINS, Circuit Judge:
 
 
 1
 The State of North Carolina appeals from the issuance of a writ of habeas corpus for state inmate Isaac Welch, Jr. on the ground of juror bias. We affirm.
 
 I.
 
 2
 Welch was convicted in state criminal court in Madison County, North Carolina, of the second degree kidnapping and attempted rape of a former neighbor, Angela Hensley. He was sentenced to nine years imprisonment on the kidnapping charge, and three years imprisonment, consecutive, on the attempted rape charge.
 
 
 3
 Ms. Hensley, a student at Mars Hill College, testified that at approximately 1:00 a.m. on September 2, 1982 she received a telephone call from her brother, a soldier who was home on leave. He told her that he was visiting Welch and his wife at their home and invited her to join them. Welch's wife picked up Ms. Hensley and drove her to the Welch home where she stayed for approximately one hour. Welch then agreed to drive her back to her dormitory and, according to Ms. Hensley, during this return trip Welch chloroformed and raped her. Welch denied this.
 
 
 4
 A physician who examined Ms. Hensley soon after the incident testified that Ms. Hensley had been unable to say whether she had been penetrated. His testimony was corroborated by an attending nurse and a police officer. The police officer testified that "[Hensley] said that she didn't remember whether she had been penetrated or not, she didn't know." However, at trial Ms. Hensley testified with certainty that she was penetrated, and gave details of the attack.
 
 
 5
 Welch admitted that while returning to Ms. Hensley's dormitory he stopped the car briefly at the location where Ms. Hensley said he had parked. However, he asserted that he only talked with her about her conduct and the poor reputation she was developing in the community. According to Welch, Ms. Hensley became very upset over his remarks and he then returned her to the dormitory. There was virtually no evidence to corroborate the testimony of either Welch or Ms. Hensley as to what actually occurred. The verdicts depended on whom the jury believed, and to what extent.
 
 
 6
 During voir dire, each prospective juror was asked individually if he knew any of the potential witnesses in the case, including the prosecuting witness, Ms. Hensley, as well as E.Y. Ponder, the Sheriff of Madison County and other investigating officers from the sheriff's office. A venireman, John David Kent, Jr., responded that he did not know them.[1] Kent was not challenged by the defense and was seated as a juror. Subsequent to Welch's conviction it was learned that Kent's half-brother, Ronnie Kent, had dated Ms. Hensley during her sophomore and senior years of high school and had been dating her during the month of August immediately preceding the events on September 2. In addition, juror Kent's father worked for Sheriff Ponder as a part-time deputy with duties that included assisting in court proceedings. Deputy Kent was present in the courtroom during Welch's trial, but was not involved with assisting the particular jury on which his son sat. Credible evidence was presented at Welch's state post-conviction hearing that hand and head signals were passed between juror Kent and his father as testimony was being presented during trial.
 
 II.
 
 7
 The issue before the district court, and previously before the state court, was whether Kent's failure to reveal the extent of his knowledge of persons who were witnesses in the case during voir dire, reflected a bias which ultimately deprived Welch of "an impartial trier of fact--'a jury capable and willing to decide the case solely on the evidence before it.' " McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (quoting Smith v. Phillips, 455 U.S. 209, 217 (1982)). In McDonough, Justice Rehnquist (now Chief Justice) stated that "to obtain a new trial in such situations, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." Id. at 556. Three justices concurred in this statement of the rule. Three other members of the Court concurred separately, asserting that:
 
 
 8
 [R]egardless of whether a juror's answer is honest or dishonest, it remains within a trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias or, in exceptional circumstances, that the facts are such that bias is to be inferred.
 
 
 9
 Id. at 556-57 (Blackmun, J., concurring, joined by J. Stevens and J. O'Connor).
 
 
 10
 The district court concluded that the circumstances presented an exceptional case in which bias must be inferred from the responses of juror Kent. It further concluded that under the "more stringent standard" of Justice Rehnquist in McDonough, Welch has also met his burden to show bias:
 
 
 11
 It simply defies all reason to say that a [prospective] juror in a rape case who admittedly knows the victim at least by sight and knows that she has dated his brother, and furthermore, knows that his father is employed as a deputy by the sheriff-investigating officer who is a witness in the case could honestly answer that he did not know any of the persons involved in the case.
 
 III.
 
 12
 The district court reached its conclusion after reviewing the record of Welch's unsuccessful effort to obtain state post-conviction relief. The State argued before the district court, as it does now, that (1) the findings of the state court upon which relief was denied disposed of issues raised by Welch in the federal proceeding, (2) the state court's findings are presumptively correct, 28 U.S.C.A. Sec. 2254(d) (West 1977), and (3) they must not be disturbed absent convincing evidence that the state court's determination was erroneous. Sumner v. Mata, 449 U.S. 539, 550 (1981). While we agree that the findings of a state court are generally accorded a presumption of correctness, we also agree with the district court that the presumption is not dispositive of this case. The presumption of correctness does not apply when the merits of a factual dispute are not resolved in the state court hearing, Sec. 2254(d)(1), when the material facts were not adequately developed at that hearing, Sec. 2254(d)(3), or when a factual determination is not fairly supported by the record, Sec. 2254(d)(8). See Mata, 449 U.S. at 550.
 
 
 13
 The district court concluded that the merits of the factual dispute "[a]s to the effect of the juror's relationship with the deputy sheriff and his apparent denial of his knowing Sheriff Ponder" were not resolved in the state court hearing. It further determined that the "broader question" of the juror's truthfulness as to his knowledge of anyone connected with the case was not adequately developed at the state court hearing, and that the record does not support the state court's finding that there was "no believable evidence to support the allegation that juror John David Kent perjured himself during voir dire." A review of the order and record of the state post-conviction proceeding establishes that the district court did not err in reaching these conclusions.
 
 IV.
 
 14
 Welch raised the issue of juror Kent's actual and implied bias in the state post-conviction proceeding.[2] The bases for his contentions of bias were the concealment of the relationship between Kent's half-brother and Ms. Hensley and his relationship to a law enforcement officer, his father, and through this his knowledge of Sheriff Ponder, his father's employer. The circumstances of these relationships bore directly on the questions put to Kent of whether he "knew" the witnesses in the case, which he denied. A truthful answer would have provided a basis for further questioning to lay a foundation to challenge his service as a juror.
 
 
 15
 Kent's responses effectively prevented the defense attorney from developing these issues during voir dire. Welch was also prevented from fully exploring these issues in the state post-conviction proceeding. For example, at Welch's criminal trial Angela Hensley described Ronnie Kent as her boyfriend. However, after juror Kent's knowledge of her relationship with his half-brother had been raised as a shadow on the fairness of Welch's convictions, she testified at the state post-conviction hearing that she had only dated Ronnie Kent "a few times." Efforts to impeach her by exploring this inconsistency with her previous testimony were met with repeated objections. The objections were sustained despite previous testimony from a neighbor of the Kents that the couple dated for a period of approximately six to eight months. The neighbor further testified that during this period he saw them drive past his home on many occasions on their way to Ronnie Kent's house which sits only 200 to 300 feet from the home of juror Kent.
 
 
 16
 Juror Kent admitted in the same state proceeding that, notwithstanding his answers to voir dire, he had known Ms. Hensley "by sight," listened to all of her testimony at Welch's trial including her statement that his half-brother was her boyfriend, and stated that he "didn't think [Ms. Hensley] would lie on the stand." However, he claimed that at no time during the testimony of Ms. Hensley did he become concerned about his service as a juror, and that he believed his voir dire responses were essentially truthful.
 
 
 17
 The state post-conviction record further shows that three witnesses testified, without challenges to their credibility, that they saw gestures consisting of head movement and hand signals pass between juror Kent and his father during trial. After the hearing, the state judge concluded that:
 
 
 18
 [T]he witnesses called by the defendant-petitioner who testified about body gestures between juror John David Kent and his father all admitted that they did not know what the gestures meant or if they had anything to do with, or any influence upon the trial or the jury's verdict and the State presented witnesses at the hearing who testified that they were present throughout the trial and never saw any such body gestures.
 
 
 19
 He then held that "[t]here is no believable evidence to support the allegation that juror John David Kent perjured himself during voir dire."
 
 
 20
 The state judge's order is otherwise devoid of any specific findings relating to the resolution of the issues of actual or implied bias on the part of Kent. In short, it simply glossed resolution of the essential questions raised concerning the fairness of Welch's convictions. It said nothing about whether juror Kent's obviously incorrect statement that he did not know Sheriff Ponder or other law enforcement witnesses was evidence of bias. Further, the state judge's order is particularly conspicuous in its total failure to address the relationship between Angela Hensley and juror Kent's half-brother, and the issue of juror bias as evidenced by voir dire responses which concealed the juror's knowledge of this relationship.
 
 
 21
 In Welch's federal habeas corpus proceeding the district court considered substantially the same evidence that had been presented in the state post-conviction hearing, as well as additional testimony. It concluded that the broader question of Kent's truthfulness in responding that he did not know persons connected with the case had not been adequately developed in the state proceeding. It also determined that even the more stringent standard articulated by Justice Rehnquist in McDonough was met in both the federal and state proceedings because "Kent's answers were not honest.... [and] an honest answer would have been a valid basis for a challenge for cause," see N.C.Gen.Stat. Sec. 15A-1212(9) (1987).
 
 
 22
 Since the issues raised by Welch were not adequately developed and resolved at the state post-conviction hearing, the question is whether the evidence before the district court established actual bias or, under exceptional circumstances, implied bias. The State argues that if everyone on the venire had been required to respond when individually asked if they "knew" Sheriff Ponder, a majority would have responded affirmatively because almost everyone knew Sheriff Ponder in the sense that they knew who the sheriff was. But juror Kent's father worked for Sheriff Ponder as one of his deputies. Surely, any reasonable interpretation of the word "knew" in the context of voir dire of a criminal venire would require disclosure of this relationship just as it would require an affirmative answer when juror Kent was asked about Ms. Hensley since he knew her name, knew her "by sight," and knew she had dated his half-brother. We agree with the district court that Kent's responses concealed material information and that this concealment does not, under these circumstances, reflect an honest and inadvertent failure to comply with voir dire.
 
 
 23
 The district court properly concluded that the state proceeding did not adequately resolve the issues presented. Its finding that the evidence established implied bias, or in the alternative actual bias, was not clearly erroneous.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The voir dire of potential jurors was not recorded. However, the parties are in agreement and the district court found that juror Kent answered in the negative when asked if he knew some of the prospective witnesses, including the victim and Sheriff E.Y. Ponder, both of whom testified at trial
 
 
 [2]
 In his petition for state post-conviction relief Welch alleged:
 Petitioner's right to trial by an impartial jury as guaranteed [by] the sixth amendment to the constitution of the United States was violated, to wit:
 That the jury panel for the trial was biased by the seating of a John David Kent of Marshall, North Carolina, who perjured himself to be admitted to the trial jury. John David Kent is in fact the older sibling to a Ronnie Kent, the same Ronnie Kent referred to by the prosecuting witness, Angela Dawn Hensley, as her boyfriend.... That John David Kent and his father, John Frederick Kent did sit opposite in [the] court room passing visible signals during trial.
 The record of the state proceeding shows the state judge understood that Welch sought "to show there was bias on the part of juror Kent" and counsel for Welch argued in summation:
 [T]here is sufficient evidence in this case for a finding of actual bias by the Court, or in the alternative a finding of implied bias....
 [T]he evidence is sufficient to meet our burden of proof on the question of actual bias, certainly using the average man test as enunciated by the Courts, and if not actual bias then I think without question that the evidence is overwhelming on the issue of implied bias.