OPINION
On February 1, 1985, the Stark County Grand Jury indicted appellant, David Allen Sneed, on one count of aggravated murder with death penalty and firearm specifications in violation of R.C.2903.10(B), R.C. 2929.04(A)(7) and R.C.2929.141, and one count of aggravated robbery with a firearm specification in violation of R.C. 2911.01(A) and R.C. 2929.141. Said charges arose from the shooting death of Herbert M. Rowan on November 19, 1984. The indictment also charged a co-defendant, Chevette Brown, with the same offenses and specifications. Appellant was initially found incompetent to stand trial, but was later found competent after treatment. Prior to trial, Ms. Brown pled guilty to the charges and received a sentence other than death and agreed to testify against appellant. A jury trial commenced on May 19, 1986. The jury found appellant guilty as charged. The mitigation phase commenced on July 21, 1986. The jury recommended death. By judgment entry filed August 7, 1986, the trial court accepted the recommendation and sentenced appellant to death plus an indeterminate term of ten to twenty-five years on the aggravated robbery charge and three years actual incarceration on the firearm specification. Thereafter, appellant appealed his convictions and sentence to this court and the Supreme Court of Ohio. Appellant's convictions and sentence were affirmed. See, State v. Sneed (May 22, 1989), Stark App. No. CA-6976, unreported, and State v. Sneed (1992), 63 Ohio St.3d 3, certiorari denied (1993), 507 U.S. 983, respectively. On December 13, 1993, appellant filed in the Court of Common Pleas for Stark County, Ohio a petition to vacate or set aside judgment and/or sentence pursuant to R.C. 2953.21. Thereafter, appellant filed an amended petition raising the number of claims for relief to one hundred twelve, and supplementary materials in support of his petition. On June 11, 1999, appellee, the State of Ohio, filed a response and a motion for summary judgment. On August 2, 1999, appellant filed a motion for an order for discovery of facts essential to justify his opposition of respondent's motion for summary judgment. By judgment entry filed September 28, 1999, the trial court, without an evidentiary hearing, denied appellant's motion for an order for discovery of facts, granted appellee's motion for summary judgment and dismissed appellant's petition. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE TRIAL COURT ERRED IN DENYING APPELLANT ANY OPPORTUNITY TO CONDUCT DISCOVERY OF FACTS AND EVIDENCE NECESSARY TO JUSTIFY HIS OPPOSITION TO SUMMARY DISMISSAL, OR TO DEVELOP AND SUPPORT HIS CLAIMS FOR RELIEF ONCE STATE MISCONDUCT BECAME APPARENT, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS, 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.
 II THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S SUMMARY JUDGMENT MOTION.
 III THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT SNEED AN EVIDENTIARY HEARING ON HIS PETITION FOR POST-CONVICTION RELIEF, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS, 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.
 IV THE TRIAL COURT ERRED IN ITS APPLICATION OF THE DOCTRINE OF RES JUDICATA TO APPELLANT'S CLAIMS FOR RELIEF, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS, 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.
 V THE TRIAL COURT ERRED IN DENYING THE MERITS OF APPELLANT'S POST-CONVICTION PETITION.
 I
Appellant claims the trial court erred in not affording additional time for further discovery. We disagree. Although a motion for postconviction relief is a civil case, it is specifically governed by the statutory procedures set out in R.C. 2953.21. Under subsections (C) and (D), summary judgment review is an appropriate way to conduct the initial determination of whether there are substantive grounds for relief. However, unlike an ordinary civil lawsuit, the petitioner in a postconviction proceeding is required to support his/her claims for relief with evidentiary materials at the time of the filing of the petition. "Therefore, a petitioner for post-conviction relief is not entitled to discovery during the initial stages of a post-conviction proceedings." State v. Gillard (June 22, 1998), Stark App. Nos. 1997CA00318 and 1997CA00410, unreported, citing State v. Loza (October 13, 1997), Butler App. No. CA96-10-214, unreported, page 6. In his amended petition filed February 25, 1994, appellant alleged one hundred twelve errors. Of those one hundred twelve claimed errors, appellant averred additional discovery was necessary for forty-five of them. On July 6, 1994, the trial court stayed, at appellant's request, all proceedings pending resolution of appellant's case with the Federal Bureau of Investigation under the Freedom of Information Act. See, Sneed v. Federal Bureau of Investigation, et al., Case No. 1:97CV2300 (D.C.D.C. filed October 3, 1997). Thereafter, in 1999, appellant was twice granted additional time for discovery and to respond to appellee's motion for summary judgment, on February 2, 1999 and June 18, 1999, respectively. After the expiration of the latter extension, the trial court reviewed the matter under summary judgment pursuant to appellee's motion and dismissed the petition. In his response to the motion for summary judgment, appellant argued there were sixty-six claimed errors that required additional discovery. Although appellant argued additional time was necessary in order to respond to the issues raised by appellee in the summary judgment motion, the response did not explain what the nature of the discovery would be, nor did it particularize what discovery was necessary for each claimed error. In addition, appellant's response did not explain why the discovery concerns were not addressed during the five years the petition was pending under stay. By judgment entry filed September 28, 1999, the trial court addressed appellant's request for additional discovery, finding the following: With respect to Petitioner's motion for order of discovery of facts essential to justify his opposition to respondent's motion for summary judgment, the record indicates that this matter has been pending for almost six years. The amended petition to vacate or set aside filed on March 25, 1994, stated that Petitioner `required discovery as provided by the Ohio Rules of Civil Procedure in order to fully develop and pursue this claim' on forty-five (45) of its one hundred twelve (112) claims for relief. Since Petitioner has had approximately over five (5) years to file his amended petition to conduct additional discovery of facts, its foregoing motion for an order for discovery of facts is herein DENIED.
We concur with the trial court's finding. Although we appreciate the gravity of appellant's postconviction petition, we find there was more than adequate time for any preparation of supporting affidavits and exhibits. Furthermore, the trial court granted extensions to appellant in order to conduct further discovery and respond to the motion for summary judgment. This assignment of error is without merit. Assignment of Error I is denied.
 II, III, IV, V
Appellant claims the trial court erred in granting summary judgment to appellee and in dismissing his petition for postconviction relief without holding an evidentiary hearing. We disagree. The trial court rejected appellant's claims on the basis of res judicata, failure of proof and prevailing law. We have examined the one hundred twelve claims and will discuss them as they pertain to the three cited categories. As stated by the Supreme Court of Ohio in State v. Perry (1967), 10 Ohio St.2d 175, paragraphs eight and nine of the syllabus, the doctrine of res judicata is applicable to petitions for postconviction relief. The Perry court explained the doctrine at 180-181 as follows: Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment. As stated in 18 American Jurisprudence 2d 505, Section 33:
 `Just as the petitioner's knowledge, at the time of trial, of the error of fact relied upon, or his fault in not discovering such error previously, will bar relief under a common-law writ of error coram nobis, such factors will also bar a comparable statutory [postconviction] remedy.'
Pursuant to appellant's direct appeal, this court reviewed and rejected twenty-eight assignments of error. See, State v. Sneed (May 22, 1989), Stark App. No. CA-6976, unreported. The Supreme Court of Ohio reviewed appellant's case and affirmed. See, State v. Sneed (1992), 63 Ohio St.3d 3, certiorari denied (1993),507 U.S. 983. As mandated by R.C. 2953.08, each appellate level did an independent review and analysis of the facts and mitigating and aggravating circumstances. The trial court sub judice specifically found Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 36, 50, 60, 72 and 87 were argued and addressed in the direct appeals. We concur with the trial court's analysis and find the following claims correspond to the following assignments of error: Claim 1: Assignment of Error I Claim 2: Assignment of Error II Claim 3: Assignment of Error III Claim 4: Assignment of Error VI Claim 5: Assignment of Error IX Claim 6: Assignments of Error XI and XII Claim 7: Assignments of Error IX and X Claim 8: Assignment of Error X Claim 9: Assignments of Error IV and VIII Claim 10: Assignment of Error XIV Claim 11: Assignments of Error XVII-XIX Claim 16: Assignment of Error XVII Claim 18: Assignments of Error XVII-XIX and XXII-XXV Claim 19: Assignments of Error XVII-XIX and XXII-XXV Claim 20: Assignment of Error XXI Claim 21: Assignment of Error XXI Claim 22: Assignment of Error XVII Claim 23: Assignment of Error XVII Claim 24: Assignments of Error XVIII, XIX and XXI Claim 25: Assignments of Error XVIII and XXII Claim 26: Assignments of Error XVIII and XXII Claim 30: Assignments of Error IV and XV Claim 31: Assignment of Error XV Claim 35: Assignment of Error XXII Claim 36: Assignments of Error XVI-XIX, XXII, XXV, XXVI and XXVIII
Claim 38: Assignment of Error III in part Claim 40: Assignment of Error XXII Claim 47: Assignment of Error XXII Claim 50: Assignments of Error XVIII, XIX and XXI Claim 56: Assignment of Error XX Claim 57: Assignment of Error XV Claim 72: Assignment of Error IX Claim 87: Assignment of Error XXVI Claim 93: Assignments of Error VI and VII Claim 96: Assignment of Error IX Claim 99: Assignment of Error XXVI Upon review, we conclude under Perry the doctrine of res judicata bars the relitigation of Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 30, 31, 35, 36, 38, 40, 47, 50, 56, 57, 72, 87, 93, 96 and 99. Separate and apart from the specific assignments of error in the original appeal, the Perry mandate at paragraph nine of the syllabus precludes "any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." We find the following claims that are unsupported by any affidavit or evidentiary matter clearly apply to the above standard. Claims 34, 49, 59, 60, 62, 63, 77, 81, 85 and 98 challenge the jury instructions by the trial court. These challenged instructions were not objected to and therefore not proper for direct review under Crim.R. 30. This issue could have been raised under ineffective assistance of trial counsel on direct appeal therefore, these claims are res judicata. Claims 32, 58, 61, 71, 106 and 107 involve challenges to the venire, voir dire, make-up of the jury and death qualifications of the jury. All of these claims were clearly evident and of record at the time of the direct appeal and are therefore res judicata. Claims 12, 13, 14, 15, 33, 39, 41, 64, 82, 86, 88 and 94 challenge procedures during the trial. We find these claims were of record or are unsupported by any affidavit or exhibit and are therefore res judicata. Claims 70 and 89 challenge the trial court's opinion on the recommendation of death. We find these claims were of record at the time of the direct appeal and are therefore res judicata. Claim 43 asserts the state on appeal failed to establish beyond a reasonable doubt that any constitutional error during appellant's trial did not contribute to his conviction. This claim is unsupported by any evidence and it argues a reverse negative. This court and the Supreme Court of Ohio spoke in the direct appeals to the claimed constitutional errors and rejected them therefore, this claim is res judicata. Claim 110 asserts appellant was denied a fair trial because the jury considered the issue of a firearm specification and the death specification at the same time. No evidentiary material is cited for this claim. There is no dispute in the record that the victim died of a gunshot wound. June 2, 1986 Vol. I T. at 39, 46. Further, this claim was clearly of record and available for resolution on direct appeal and is therefore res judicata. The remaining claims aver that specific exhibits (affidavits, expert reports and police supplements) support the claims for relief. In a petition for postconviction relief, the petitioner bears the burden of producing affidavit and evidentiary material to substantiate the claim for relief: This court, in State v. Mishelek (1975), 42 Ohio St.2d 140, approved the rationale in State v. Milanovich, [(1975), 42 Ohio St.2d 46] supra, but, in footnote 2, at page 141, aptly stated that:
 `However, as this court pointed out in Milanovich, at page 50, "this does not necessarily require that an evidentiary hearing be held for every petitioner who relies upon matters outside the record, since evidence of such matters may be introduced by motion for summary judgment by either the petitioner or the prosecuting attorney." ` (Emphasis added.)
* * *
Post-conviction relief is a remedy sought by a defendant who has been tried to a jury and found guilty beyond a reasonable doubt on each element of the offense charged and who has already gone through the crucible of appeal from that judgment.
Therefore, in the interest of judicial economy and efficiency, it is not unreasonable to require the defendant to show prejudicial factors in his petition for post-conviction relief before a hearing is scheduled.
State v. Jackson (1980), 64 Ohio St.2d 107, 111-112.
This review was further refined by the Supreme Court of Ohio in State v. Calhoun (1999), 86 Ohio St.3d 279, 284-285, as follows: Unlike the summary judgment procedure in civil cases, in postconviction relief proceedings, the trial court has presumably been presented with evidence sufficient to support the original entry of conviction, or with a recitation of facts attendant to an entry of a guilty or no-contest plea. The trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant. That conclusion is supported by common sense, the interests of eliminating delay and unnecessary expense, and furthering the expeditious administration of justice. See Civ.R. 1(B) and 1(C); Cole, 2 Ohio St.3d at 114, 2
OBR at 663, 443 N.E.2d at 171 (`[T]he allegations outside the record upon which appellant relies appear so contrived, when measured against the overwhelming evidence in the record of trial counsel's competence, as to constitute no credible evidence'); Sumner v. Mata (1981), 449 U.S. 539, 545-546, 101 S.Ct. 764,768-769, 66 L.Ed.2d 722, 730 (state appellate court factfinding based on a record review may be adequate to warrant a presumption of correctness in federal habeas corpus proceedings pursuant to former Section 2254[d], Title 28, U.S.Code).
An affidavit, being by definition a statement that the affiant has sworn to be truthful, and made under penalty of perjury, should not lightly be deemed false. However, not all affidavits accompanying a postconviction relief petition demonstrate entitlement to an evidentiary hearing, even assuming the truthfulness of their contents. Thus, where a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential. See, generally, State v. Perry (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104.
In determining the credibility of supporting affidavits in postconviction relief proceedings, we adopt the reasoning of the First Appellate District in State v. Moore (1994), 99 Ohio App.3d 748,651 N.E.2d 1319. The court, in Moore, cited Sumner, and suggested that a trial court, in assessing the credibility of affidavit testimony in so-called paper hearings, should consider all relevant factors. Id. at 754, 651 N.E.2d at 1323. Among those factors are (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony. Id. at 754-756,651 N.E.2d at 1323-1324.
We will now review the claims that aver to the affidavits and reports under the Calhoun standard.
CLAIMS OF NEWLY DISCOVERED EVIDENCE Several claims are based upon the evidence that was presented and new evidence discovered through the freedom of information request and R.C. 149.43. In State ex rel. Steckman v. Jackson (1994), 70 Ohio St.3d 420, paragraphs two and six of the syllabus, the Supreme Court of Ohio held the following: 2. In the criminal proceeding itself, a defendant may use only Crim.R. 16 to obtain discovery.
6. A defendant in a criminal case who has exhausted the direct appeals of her or his conviction may not avail herself or himself of R.C. 149.43 to support a petition for postconviction relief. (State ex rel. Clark v. Toledo [1990], 54 Ohio St.3d 55,560 N.E.2d 1313, and its progeny, overruled.)
Claim 17 asserts the memory of a witness, Daniel Jasionowski, was refreshed through hypnosis, a fact that was not disclosed to defense counsel. Upon initial contact with police, Mr. Jasionowski was unable to identify the occupants of a vehicle stopped in front of his home on the evening in question (See, Appendix to Amended Petition filed February 25, 1994, Exhibits 12 and 24), but after hypnosis was able to describe the individuals. Mr. Jasionowski described observing a tall bushy haired person in dark clothing outside the vehicle, but was unable to identify the race of the individual. Mr. Jasionowski described a passenger in the front seat and a passenger in the back seat as being "white." See, Appendix to Amended Petition filed February 25, 1994, Exhibit 16. Under Steckman, the information in Exhibits 12 and 24 are not available for this appeal. Further, given the vague description of the parties, there is no prejudice. Claim 37 requests further discovery. We have previously addressed the discovery issue in Assignment of Error I. We find given the prosecution of the federal district court proceeding, this claim is moot. Claim 44 asserts the ownership of the gun the state claimed killed the victim was not disclosed to defense counsel. Exhibit 25 in appellant's appendix to amended petition filed February 25, 1994 establishes the original owner of the gun was one Paul Shoemaker of Bellvue, Ohio. Mr. Shoemaker sold the gun to Ray Watson in 1978 who in turn sold it to Bobby Ray McCowan. The police were unable to reconstruct the chain of ownership any further. We fail to find that this creates any substantive claim for relief because Chevette Brown admitted to having the gun; the only issue was whether Ms. Brown or appellant pulled the trigger. The gun's prior ownership was irrelevant to the case given the fact that the chain of ownership was completely broken. Claims 45, 46, 51 and 68 center upon the lack of discovery afforded to defense counsel on the character of the victim and other evidence: Claim 45 states the following: 302) Petitioner's convictions and sentences are void and/or voidable because the State of Ohio failed to provide relevant discovery information which was generated by the Division of Police of the City of Canton and Federal Bureau of Investigation during the course of their investigation of actions allegedly committed by the Petitioner. For example, the State failed to disclose that the victim, Herbert M. Rowan:
A. Used numerous aliases, such as Butch Rowan, and Butch Kucera;
B. Was bisexual and had a reputation as a hustler or male prostitute;
C. Stole from people he met as a result of which he was not permitted in at least one home in the Canton area; D. Told at least one person that he planned to sell marijuana and do some hustling to make money the night he was killed;
E. Had a reputation for receiving money for sexual favors, but not paying for sexual favors; and
F. Had a reputation for not picking up prostitutes or giving rides to strangers.
See for example Exhibits 10, 12, 14 and 16.
303) The State additionally failed to disclose that:
 A. The victim's car had snow on it when recovered, which calls into question the testimony the State presented about finding co-defendant Chevette Browns' fingerprint on the outside of the vehicle;
 B. Daniel Jasionowski who allegedly witnessed the murder, could recall very little about the incident until his memory was "hypnotically refreshed" by Richard Bryan, Chief of the Massillon Police Department;
 C. Daniel Jasionowski's statements to the police, both before and after hypnosis, contained facts which refuted the state's theory of the case, but which facts were never disclosed to defense counsel or presented to the trier of fact;
 D. The police were provided with the names of other suspects, such as "Miss Kelley" (a female impersonator), and William Bennett, who confessed to a similar murder and who admitted smoking Newport Cigarettes, one of which was found in the ash tray of the Herbert Rowan's vehicle;
 E. The victim was seen at the party after the bar he was at the night he was killed had closed;
 F. A bloody shirt was found in a local dumping area around the time Herbert Rowan was killed;
 G. The police actively sought out jailhouse informants (snitches) who would be willing to testify against Petitioner following his arrest; and
 H. The gun the state contended was used to kill Herbert Rowan had been purchased by Captain Paul Shoemaker or the Bellevue Police Department.
See Exhibits 10, 12, 14, 15, 18, 20, 22-25.
As to all of these claims based upon items and information disclosed through R.C. 149.43, we find Steckman to be controlling. Claims 27, 28, 29 and 48 attack the sufficiency and weight of the evidence presented at the guilt and mitigation phases of the trial. Appellant relies on exhibits obtained through R.C. 149.43
and as such, will not be considered under Steckman. Further, we note these claims were of record and susceptible to review on direct appeal and are therefore res judicata. We further note the independent appellate review mandated by R.C. 2953.08 requires these claims to be barred by the doctrine of res judicata. Claim 53 asserts there were unindicted co-conspirators, namely, Theotis and Richard Dillard, and therefore appellant was subjected to selective prosecution. The issue of selective prosecution was addressed in the original appeal via Assignment of Error XVII and is therefore res judicata. Claims 65, 66, 67, 83 and 92 challenge the wording and phraseology of the trial court's charge to the jury. Claims 65 and 67 specifically refer to Exhibit 8 in appellant's appendix to amended petition filed February 25, 1994, the affidavit of Michael L. Gies, a Ph.D. in linguistics. Said affidavit opines the "OJI" jury instructions are "significantly biased against the interests of defendants and employs vague and sometimes unintelligible language, as well as language that can be expected to be misunderstood or not properly understood by jurors." The attached report and analysis is a study of the jury instructions and questions raised in State v. Mitts (1998),81 Ohio St.3d 223 (anti-sympathy instruction). Claim 66 asserts there was abundant evidence of sympathy and mercy (Appendix to Amended Petition filed February 25, 1994, Exhibits 4, 5, 6, 7, 9, 15, 17 and 18, and the documents under seal). Appellant argues this evidence mandated a consideration of sympathy. Claim 92 relies solely on materials received pursuant to R.C. 149.43. As already stated, said statute may not be used in postconviction proceedings. Steckman. As noted supra, under Crim.R. 30, an objection to the jury charge must be made in order to preserve any claimed error for review. Any failure to so object would be an appealable issue under a claim of ineffective assistance of trial counsel. Further, the Ohio Jury Instructions have been sustained in every capital case appealed. See, State v. Jenkins (1984),15 Ohio St.3d 164, certiorari denied (1985), 472 U.S. 1033; State v. Maurer (1984), 15 Ohio St.3d 239, certiorari denied (1985),472 U.S. 1012. The introduction of sympathy and mercy has been rejected as a proper charge in all criminal cases in Ohio. In a capital case, the aspects of a defendant's life are properly termed mitigating circumstances. Dr. Geis's theories are contra to all the cases wherein the jury has rejected the death penalty. See, State v. Sumser, Stark C.P. No. 83-3466; State v. McCarthan, Stark C.P. No. 86-1596; State v. Deck, Stark C.P. No. 87-7354. Despite the affidavits and expert opinion which did not specifically address the jury charge, facts and jury questions sub judice, we concur with the trial court that there are no substantive matters that require postconviction relief or an evidentiary hearing. Claims 78 and 80 assert the jury venire was not representative of the populace of Stark County, Ohio. In support of these claims, appellant's own affidavit (Appendix to Amended Petition filed February 25, 1994, Exhibit 21) states he is an African-American and his jury contained no African-Americans. Any "non-whites" were excused. Clearly this issue was available on direct appeal and is therefore res judicata. Nothing in the record substantiates appellant's racial-mix claim. Claims 79, 84 and 91 assert appellant was denied a fair trial because of police misconduct, police coerced testimony and the use of false or unreliable testimony. In support of these claims, appellant relies on material from R.C. 149.43 disclosure which is specifically barred under Steckman. Further, during trial, the testimony of Theotis and Richard Dillard was examined and cross-examined as to motive. T. at 343-345, 611-620. By arguing that the conviction rested upon "highly suspect and unreliable testimony," appellant is attempting to relitigate a manifest weight or sufficiency of the evidence argument which was cognizable on direct appeal and is therefore res judicata. Claim 95 asserts that residual doubt exists and erroneously cites to R.C. 149.43 exhibits to substantiate this claim. Further, this argument has been rejected as a valid claim in postconviction relief proceedings. See, State v. McGuire (1997), 80 Ohio St.3d 390; State v. Tyler (September 10, 1998), Cuyahoga App. No. 71785, unreported.
CHALLENGES TO THE TRIAL COURT'S ACTIONS
Claim 73 asserts the trial court erred in not inquiring of appellant whether he wished to have an independent psychological evaluation during the mitigation phase of the trial. On June 16, 1986, appellant requested the appointment of two psychiatrists, Edward N. Dutton, M.D. and Mijo Zakman, M.D. Said request was granted by the trial court on June 18, 1986. Dr. Zakman, appellant's attending psychiatrist, testified for the defense and stated he personally conferred with defense counsel and evaluated appellant. July 23, 1986 T. at 347-348, 350. Dr. Zakman testified at length about the testing and evaluation of appellant. Id. at 396-424. Upon review, we find this claim to be without merit. Claim 74 asserts the trial court erred in failing to appoint an expert/non-attorney to assist defense counsel in selecting a jury. There is no right to a jury selection expert and none was requested by appellant. The petition fails to substantiate this claim with any independent affidavit or evidence. Upon review, we find this claim to be without merit. Claim 90 asserts the trial court never informed appellant or inquired of him if he wished a presentence investigation pursuant to R.C. 2929.03(D)(1). Said statute does not put the responsibility of ordering a presentence investigation on the trial court: When death may be imposed as a penalty, the court, upon the request of the defendant, shall require a pre-sentence investigation to be made and, upon the request of the defendant, shall require a mental examination to be made, and shall require reports of the investigation and of any mental examination submitted to the court, pursuant to section2947.06 of the Revised Code. (Emphasis added.)
Appellant requested a presentence investigation (request filed June 16, 1986) and said request was granted by the trial court on June 18, 1986. The presentence investigation report was testified to at length by appellant's parole officers. See, July 21 and 22, 1986 Transcript, Testimony of David K. Slater and Patrick Munford. Upon review, we find this claim to be without merit. PROSECUTORIAL ERROR Claim 53 asserts the state selectively prosecuted appellant and Chevette Brown and did not indict Theotis and Richard Dillard. Appellant argues they should have been indicted as co-conspirators. No exhibits were cited in support of this claim. Any prosecution of co-conspirators would have resulted in separate trials for each individual. There would have been no difference in the outcome. In addition, as previously stated, this issue was addressed in the original appeal via Assignment of Error XVII and is therefore res judicata. Further, under the doctrine of separation of powers [see, State ex rel. Bray v. Russell (2000),89 Ohio St.3d 132, 134-135], trial and appellate courts do not control the prosecution of criminal cases. No court can force a prosecutor to indict any specific individual. Upon review, we find this claim to be unsupported and without merit. Claim 69 asserts the prosecutor should have disclosed material to defense counsel prior to the mitigation phase that would have been helpful in the mitigation phase. Appellant argues material that was withheld by the Canton Police Department and documents filed under seal should have been disclosed. In its judgment entry filed September 28, 1999, the trial court concluded the documents under seal "do not reveal any novel issues." We concur. The documents under seal include records from the Stark County Department of Human Services. During the mitigation phase, appellant's problematic family history was presented. July 21, 1986 T. at 93-99; July 22, 1986 T. at 143, 160-170. Juanita Dillard, appellant's mother, testified to the unstable lifestyle appellant was subjected to during his youth. July 23, 1986 T. at 318-338. Upon review, we find this claim to be without merit. Claim 75 asserts the jury received incomplete information. The exhibits in support of this claim are the public record disclosure documents which are not applicable and the documents presented under seal. As stated under Claim 69, these sealed documents reveal evidence that was developed by the various witnesses and exhibits during the mitigation phase. Upon review, we find this claim to be without merit. Claim 97 asserts the state improperly obtained blood and saliva samples from appellant and Chevette Brown. We fail to find that appellant has any standing to object to the samples taken from Ms. Brown. Blood taken from appellant was identified as type "O." June 9, 1986 T. at 10. Blood found on appellant's jacket was found to be the same type as the victim's blood. Id. at 16-18. There is no mention in the record as to how the blood was obtained. The exhibits cited by appellant are of no assistance and are not proper for consideration. Further, the issue of the supervision of the blood and saliva samples would have been available on direct appeal. Upon review, we find this claim to be without merit. CROSS-CULTURAL EXPERT Claim 105 asserts the trial court or defense counsel should have provided or requested a cross-cultural expert on the issue of race. Appellant argues such an expert would have assisted defense counsel in presenting issues of how the "dominate cultural in America perpetuates racism subconsciously"; how appellant's "relationships with women in general were complicated by the psycho-social functioning of his family"; and how "racism subconsciously affects the decision making process in our criminal justice system." See, Amended Petition to Vacate filed February 25, 1994 under One Hundred Fifth Claim for Relief. Appellant supports this claim with his own affidavit claiming he is an African-American. We note appellant had an African-American attorney with numerous years of federal and state trial experience. We fail to find any of the cited issues to be relevant or admissible to guilt or non-guilt or in mitigation. Upon review, we find this claim to be without merit. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL The standard this issue must be measured against is set out in State v. Bradley (1989),42 Ohio St.3d 136, 142, certiorari denied (1990), 497 U.S. 1011. Appellant must establish two criteria:
 1) [C]ounsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition.
2) [P]rejudice arises from counsel's performance.
Appellant must further establish ". . . but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington (1984), 466 U.S. 668,696. Appellant raises fourteen claims concerning his lack of effective trial counsel in both the guilty and mitigation phases of the trial (Claims 42, 52, 54, 55, 76, 100, 101, 102, 103, 104, 108, 109, 111 and 112). Effective assistance of counsel is generally an issue that can be fully developed in the direct appeal. It is generally not an issue for postconviction relief unless the errors are only demonstrable dehors the record. Jackson, supra. To this end, appellant once again relies on materials obtained through public records disclosure. See, Appendix to Amended Petition filed February 25, 1994, Exhibits 10, 12, 14, 16, 18, 20, 22. Because these fourteen claims are substantiated by these exhibits, they are without merit and will not be addressed individually. However, we will address the claims that are based on materials separate and apart from said exhibits. CLAIMED ERRORS AS TO THE GUILT PHASE Claims 55, 100, 101, 102, 103, 104 and 112 assert defense counsel should have requested independent experts to contest and challenge the prosecution's experts and to assist in the defense investigation. No requests for experts as outlined by these claims were made at trial. The lack of these experts was an identifiable issue for direct appeal. There are no evidentiary exhibits subject to postconviction review to support these claims. We find these issues are barred by res judicata and also barred by no showing of how the outcome of the trial would have been different given the use or availability of the experts. Upon review, we find these claims to be without merit. Claim 76 asserts defense counsel did not interview the witnesses and was unprepared for trial. Once again, the supporting exhibits are the public records police reports. We find this claim has not been substantiated in any way. Claim 108 asserts fourteen areas of deficiencies by defense counsel. Many of these issues were raised on direct appeal (A, D, E, H, J) and are therefore res judicata. Other issues have been specifically addressed supra (A, B, C, I, K, L, N). The remaining issues (F, G, M) were clearly cognizable for the direct appeal and are res judicata. Claim 111 asserts defense counsel was deficient in failing to pursue a plea agreement. In his own affidavit, appellant claims he would have accepted a plea bargain if his attorneys would have advised him to. After the guilty verdict, defense counsel formally requested the non-death sentence for aggravated murder. See, Motion filed July 3, 1986. During the course of the guilt phase, defense counsel asked to plead guilty to a non-death specification charge but the prosecution declined. June 9, 1986 T. at 5-6. There is nothing in the record to substantiate appellant's position that a plea bargain had been offered. Upon review, we find this claim to be without merit. CLAIMED ERRORS AS TO THE MITIGATION PHASE Claim 42 asserts defense counsel was deficient in not requesting a social worker to assist in the interviewing and preparation of witnesses. No such request was made at trial. In support of this claim, appellant presents the documents filed under seal (the remaining documents were previously barred) and eight issues that should have been presented. After review of the mitigation trial, we find all of these issues, save the claim of sexual abuse suffered as a child, were presented although in the exhibits there are repeated references to appellant's homosexual acting out prior to this case. As noted by the evaluation of Jeffrey L. Smalldon, Ph.D. (See, Appendix to Amended Petition filed February 25, 1994, Exhibit 7), the evaluation by appellant's attending psychiatrist, Dr. Zakman, was primarily on target and resolved the issue of malingering during the mitigation phase. We find any references to sexual abuse suffered as a child were not in the record and thus not available to defense counsel. Upon review, we find no deficiency by defense counsel or any showing of how the outcome would have been different. Upon review, we find this claim to be without merit. Claim 52 asserts defense counsel was deficient in failing to conduct a pre-mitigation investigation. As noted supra, the mitigation evidence contained a verbal description of appellant's unstable and problematic life. Despite the affidavits supplied in support, family members did testify concerning appellant's unstable lifestyle [Juanita Dillard, Theotis Dillard, Mary Brown and Ricky Taylor (aka Richard or Rick Dillard)]. Juanita Dillard never mentioned she was physically abused by her male friends. We fail to find non-disclosure by subpoenaed witnesses has any bearing on defense counsel deficiency or that there would have been a substantial difference in the outcome of the trial. As noted supra, defense counsel did request an independent evaluation and such was ordered. Upon review, we find this claim to be without merit. Claim 54 asserts the missing mitigation evidence precluded the jury from reaching a fair result. Apart from the allegation of sexual abuse, the record is replete with the unstable, uncaring and chaotic life of appellant as a child. We find the failure to discover the claimed sexual abuse did not affect the outcome of the trial. Dr. Smalldon conceded that Dr. Zakman gave an accurate diagnosis and all the elements in Dr. Smalldon's evaluation were covered at the mitigation phase by school officials, family members and the psychological medical records. Upon review, we find this claim to be without merit. Claim 109 asserts defense counsel was deficient in not objecting to certain issues. Subsections A, B, C, D, H, I, J, K, L, M, N and O are res judicata as having been raised on direct appeal or as being cognizable issues for direct appeal. Subsections E, F and G have been previously addressed. Upon review, we find this claim to be without merit. Upon review, we find the trial court did not err in granting summary judgment to appellee on appellant's petition for postconviction relief. Assignments of Error II, III, IV and V are denied.
The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.